## BROOKS v. FIRST NAT. LIFE INS. CO.
### No. 16603.

Court of Appeal of Louisiana. Orleans.
March 22, 1937.

Normann & McMahon and Harold M. Rouchell, of New Orleans, for appellant.

J. I. McCain, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, a colored woman, instituted this suit for recovery, as beneficiary, on an industrial life insurance policy issued by the defendant on the life of her husband, who died on July 19, 1936.

The policy, which is dated March 29, 1926, lapsed by reason of the nonpayment of the requisite weekly premiums, either during the year 1930 or during the year 1934. Plaintiff concedes that, if the policy lapsed prior to 1934, she is without right to recover, but it is her contention that the lapse did not occur until after December 17, 1934, and that, at that time, there was a sufficient reserve accumulated by the company to extend coverage under the policy to the date of her husband's death.

The defendant concedes that, if the weekly premiums due under the policy were paid to December 17, 1934, the plaintiff is entitled to recover, but it asserts that this policy, which is numbered 166724, lapsed prior to the year 1931.

The issue thus presented (a question of fact) was tried, and the lower court, after hearing the evidence, found for the plaintiff. The defendant has appealed from the judgment, and it claims here that the trial judge's holding on the facts is manifestly erroneous, and further that the judge committed reversible error in excluding certain evidence tendered by it at the trial.

■■ We shall first consider the alleged error of the judge in finding for the plaintiff on the evidence submitted.

In order to prove her contention that the policy did not lapse prior to December 17, 1934, plaintiff tendered, in connection with her own testimony, a premium receipt book given to her by the defendant.

The substance of her statement is as follows:

She obtained the policy No. 166724 from the defendant on March 29, 1926. She asserts that this was the only insurance policy she had with the defendant and that she paid all of the requisite weekly premiums due thereon, until the latter part of December, 1934, when she allowed the policy to lapse. Shortly after her husband's death in 1936, she turned over the policy in suit, together with a certain premium receipt book, to one Rhodes, a negro undertaker, and requested him to present these documents to the insurance company for payment; that, in accordance with her instructions, Rhodes called at the office of the defendant, and submitted to it the policy and the premium receipt book with a request for payment of the proceeds. She states that Rhodes told her that the defendant refused payment on the policy, because the premium receipt card submitted to it in connection with the policy, was the wrong card and that she (when Rhodes returned the policy and card to her) destroyed the card. Notwithstanding the fact that she positively testifies that she destroyed this "wrong" premium receipt card, she persists throughout her statement that she had only one policy with the defendant on the life of her husband and that she had only the one premium receipt card (offered in evidence in corroboration of her testimony). This receipt card contains a record of weekly payments made by plaintiff from

August 13, 1934, to December 31, 1934. Although she claims that premiums were paid by her from the date the policy was issued through December 17, 1934, she failed to present any evidence, other than her uncorroborated statement, showing the payment thereof for the years 1931, 1932, and 1933. The production of receipt cards, showing payment of premiums for those respective years, would have been highly corroborative of her contention that the policy did not lapse in 1930 (as maintained by the defendant). But plaintiff's theory is that the premium receipt card offered in evidence, which shows on its face that payments were made on this policy in 1934, fortifies her statement that the policy did not lapse until the latter part of December of that year.

The defendant's position as to plaintiff's theory of the case is twofold: First, it said that an examination of the receipt card readily reveals to the eye that the portion thereof, where the policy No. 166724 is written in pencil, has been tampered with and altered. Second, it is asserted that when this obvious erasure on the card is considered in connection with the evidence given by defendant's witness John H. Dew, it is destructive of plaintiff's case, and amply justifies the conclusion that her contentions are spurious and that the claim was made with a design to defraud the defendant.

We have examined the portion of the card where the alteration is said to exist, and are convinced that certain erasures had been made thereon. To say the least, the number 166724, written in pencil, has a suspicious appearance. For instance, at the place where the numeral "1" is now written, there appears, slightly visible, the attempted erasure of the numeral "4."

Furthermore, the defendant has sufficiently proved, to our satisfaction, by the evidence submitted by Mr. Dew, its Vice President, that (1) the policy sued on lapsed prior to 1931 for nonpayment of premiums; (2) that some time in 1932 another policy of insurance, No. 482970, was taken out on the life of plaintiff's husband, which lapsed in 1934; (3) that the receipt card, offered by plaintiff to prove her case, has reference to premiums paid on policy No. 482970 and not No. 166724 in suit; (4) that No. 482970 was originally the number on the receipt card offered by plaintiff; and (5) that this number was erased (some time after the

death of plaintiff's husband) and the number 166724 written over said erasure.

Mr. Dew testified that, shortly after the death of the insured, the negro undertaker, Rhodes, called at his office for the purpose of obtaining for the plaintiff the proceeds of the policy sued upon. He says that Rhodes produced this policy and the premium receipt card offered in evidence in this case, and that payment was refused by the defendant because its records exhibited that the policy (No. 166724) had lapsed for nonpayment of premiums prior to January 1, 1931. He further says that an examination of the ledger kept by the company, respecting the payment of premiums since 1931 on the policy sued on, revealed that no premiums had been paid on it since 1930 and that the premium receipt card, which was submitted to him by the negro undertaker, Rhodes, at the time the policy sued on was presented for payment, bore the number 482970. He identifies the receipt card, which is offered in evidence in this case and which now bears the number of the policy sued on, to be the same receipt card, which was presented to him by Rhodes, bearing policy No. 482970. He further testifies that the records of the company show that two policies were issued by it on the life of the insured, one policy (the one sued on) bearing number 166724 dated March 29, 1926, which had lapsed for nonpayment of premiums prior to 1931, and another policy bearing number 482970 dated some time in 1932, which lapsed for nonpayment of premiums as of date, December 17, 1934. This witness further explained that the agents of the company, who had received payment of the premiums entered on the receipt card produced by plaintiff, are no longer in the defendant's employ, and that their whereabouts are unknown.

The evidence of defendant's witness Ball is unimportant, as he was not able to testify to pertinent facts, respecting the payment of premiums on the policy, from his own knowledge.

There is nothing in the record, however, which offsets the evidence of Mr. Dew. His story is unimpeached, and we cannot conceive why the trial judge did not give full credence to the unrebutted facts testified to by him. His evidence might have been attacked, if the plaintiff had seen fit to place her agent, the negro undertaker Rhodes, on the witness stand. But Rhodes was not produced and his absence is unex-

plained. In view of these circumstances, we apply the well-established rule that, if Rhodes had taken the stand, his testimony would have been unfavorable to her cause. Moreover, the testimony of Mr. Dew, when considered in connection with the suspicious appearance of the premium receipt card produced by plaintiff (which we believe was altered), compels the irresistible conclusion that the plaintiff has deliberately schemed to perpetrate a fraud upon the defendant.

The defendant further complains that our brother below was wrong when he refused to allow its records to be admitted in evidence, because the book entries were not identified by the persons making them. Inasmuch as we are of the opinion that the judgment on the evidence presented is obviously incorrect, it is unnecessary to determine whether the ruling was faulty.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment herein dismissing plaintiff's suit at her cost.

Reversed.